**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

N.M., a minor, by and through his father, Curtis Merrill, and his mother Karalee Merrill,

Plaintiff,

v.

Marana Unified School District; Caitlyn Kauffman, in her individual capacity; Kristin Reidy, in her individual capacity; Robin Meece, in her individual capacity; Joshua Bayne, in his individual capacity; and Daniel Streeter, in his individual capacity,

Defendants.

No. CV-25-00377-TUC-EJM

**ORDER[1]**

Pending before the Court is Defendants' Motion to Dismiss (Doc. 20). Plaintiff responded in opposition to the motion to dismiss and Defendants replied. (Docs. 23, 27.) As such, the motion is fully briefed and ripe for adjudication. In its discretion, the Court finds this case suitable for decision without oral argument. *See* LRCiv. 7.2(f). The Parties have more than adequately presented the facts and legal arguments in their briefs and supporting documents, and the decisional process would not be significantly aided by oral argument. As discussed below, the Court will grant in part and deny in part Defendants' motion to dismiss.

---

[1] The Parties have consented to the jurisdiction of the undersigned. (Docs. 5, 18.)

## I. FACTUAL BACKGROUND[2]

### A. *N.M.'s Draft E-mail and Marana High School's Initial Contact*

Plaintiff N.M. was a sophomore at Marana High School during the 2024–2025 school year. FAC (Doc. 7) at ¶ 28. Curtis and Karalee Merrill are N.M.'s parents. *Id*. ¶ 31. "On October 9, 2024, N.M. was sitting with Karalee as she got herself and N.M.'s siblings ready for the day." *Id*. ¶ 32. N.M. did not intend to attend school that day. *Id*. ¶ 33. He asked Karalee for advice about an English assignment, for which he received a poor grade. *Id*. ¶ 34. Karalee suggested that N.M. e-mail his teacher asking if he could resubmit the paper, or what he could otherwise do to raise his grade. *Id*. ¶ 35.

N.M. sought his mother's help getting started with the e-mail. FAC (Doc. 7) ¶ 36. He typed his teacher's email address and "Revise Journal" in the subject line. *Id*. ¶ 37. Undecided about what to write in the body of the e-mail, N.M. started typing "jokes" such as "Mister mister I want to date your sister" and "Skibidi toilet my grade is in the toilet." *Id*. ¶ 38. As N.M. typed, he narrated his statements to his mother and deleted them. *Id*. ¶ 39. N.M. then typed, "GANG GANG GIMME A BETTER GRADE OR I SHOOT UP DA SKOOL HOMIE[,]" and read it to his mother in a silly voice. *Id*. ¶ 40–41. Karalee told him to delete the e-mail, so that he did not accidentally send it to his teacher. FAC (Doc. 7) ¶ 42. N.M. immediately deleted the message and closed his laptop, without finishing or sending the email. *Id*. ¶ 43.

Within an hour of N.M. closing his laptop, Principal Kauffman and School Resource Officer Michael Abrigo called Karalee, asking about N.M.'s location because he was not in class, and they were concerned about a possible threat. *Id*. ¶ 44. Principal Kauffman reported having received a Gaggle notification regarding N.M.'s Chromebook use. *Id*. ¶ 45. The Gaggle notification included a photograph of N.M.'s screen, showing his draft e-mail. FAC (Doc. 7) ¶ 47. Karalee explained that "N.M. was at home, was with her when

---

[2] For purposes of this Order, the Court will take as true the factual allegations contained in Plaintiff's First Amended Complaint ("FAC") (Doc. 7). *See Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).

he typed the draft email, had been joking, and did not send or intend to send the email." FAC (Doc. 7) ¶ 49. Karalee further stated that "neither she nor N.M. knew his keystrokes were being tracked or that anyone could see the draft email." *Id*. ¶ 50. Principal Kauffman read N.M.'s draft e-mail to Karalee quoting, "GANG GANG GIMME  A BETTER GRADE OR I SHOOT UP DA SKOOL HOMIE." *Id*. ¶ 52. After further discussion, Principal Kauffman said she would call Karalee later that day with more information. *Id*. ¶ 53.

### B.    Initial Discipline

On the evening of October 9, 2024, Principal Kauffman left Karalee a voicemail apologizing for not calling sooner and stating that she "wanted to have the opportunity to speak to [her] boss, [her] assistant superintendent who supports us with discipline." FAC (Doc. 7) ¶ 54. Principal Kauffman further stated that given this discussion, "it was determined N.M. would be suspended for ten days 'for using a school device to write about shooting up the school' and that he would have a long-term suspension hearing during this initial ten day suspension." *Id*. ¶ 56. Principal Kauffman noted that because N.M. had "'never been in trouble and was a good student typically,' the District would recommend at the long-term suspension hearing an 'eleven day suspension with some counseling." *Id*. ¶ 57. Principal Kauffman apologized for the news, reiterating that the suspension was due to N.M.'s use of a school device in writing about a school shooting. *Id*.

Subsequently, Curtis Merrill called Principal Kauffman to discuss N.M.'s punishment. *Id*. ¶ 58. During this call, Principal Kauffman again acknowledged N.M.'s lack of disciplinary actions and "very good school record." FAC (Doc. 7) ¶ 59. Principal Kauffman conveyed that although this was a "mistake" on N.M.'s part, the suspension would not be changed. *Id*. N.M. did not speak to anyone from Marana High School or the District. *Id*. ¶ 60.

### C.    Long-Term Suspension Hearing

"On October 28, 2024, the District held a long-term suspension hearing."[3]  FAC

---

[3] Students in the Marana Unified School District were on Fall Break from October 14–18,

(Doc. 7) ¶ 61. Hearing Officer Meece presided over the hearing, and Principal Kauffman, Curtis, Karalee, and N.M. were present. *Id*. ¶ 62. "The hearing was to determine whether N.M. had violated the District's Comprehensive Student Discipline Policy: Matrix #21, Threatening or Intimidating." *Id*. ¶ 63.

The hearing began with Principal Kauffman's testimony regarding the events of October 9, 2024. *Id*. ¶¶ 64–65. During her testimony, "Principal Kauffman did not allege that N.M.'s draft email presented an identifiable and credible threat of school violence." *Id*. ¶ 67. Following Principal Kauffman's testimony, Hearing Officer Meece questioned N.M. about the charges. FAC (Doc. 7) ¶ 68. This questioning lasted approximately one (1) minute, with Hearing Officer Meece asking N.M. if Principal Kauffman's testimony was "pretty much what was going on" and if N.M. knew that at school he should not be writing or talking about "those kind of things[.]" *Id*. ¶¶ 69–71. "Hearing Officer Meece asked Curtis and Karalee if there was anything they wanted to add." *Id*. ¶ 72. Curtis and Karalee testified regarding the circumstances of the draft e-mail. *Id*. ¶ 73.

"Principal Kauffman presented the District's recommendation that N.M. be suspended for forty-five days, to include the ten days currently being served, with the suspension reduced to eleven days if N.M. completed three counseling sessions." *Id*. ¶ 74. Hearing Officer Meece found that N.M. violated Matrix #21, Threatening or Intimidating. FAC (Doc. 7) ¶ 75. She agreed with the District's recommendation and "imposed a forty-five day suspension with the possibility of a reduction to eleven days if N.M. completed three counseling sessions." *Id*. ¶¶ 75–76. Hearing Officer Meece also told N.M. that the counseling sessions did not need "to address any violent propensity[,] . . . [or] even 'have to relate directly to anything here.'" *Id*. ¶ 77. "The hearing was concluded without N.M., Curtis, or Karalee having the opportunity to ask Principal Kauffman any questions." *Id*. ¶ 78.

. . .

---

2024. FAC (Doc. 7) ¶ 33; *see also* District Calendar— October 2024, Marana Unified School District, *available at* https://www.maranausd.org/parent-tools/district-calendar (last visited March 23, 2026).

### D.    *Long-term Suspension Affirmed*

#### 1.  Appeal to Executive Director Bayne

On October 31, 2024, N.M. appealed Hearing Officer Meece's decision.  FAC (Doc. 7) ¶ 79.  On November 6, 2024, an appeal meeting occurred with Executive Director Bayne. *Id*. ¶ 80.  Curtis and Karalee shared their concerns, "including that N.M. was denied due process and that his draft e-mail was not an actual threat."  *Id*.  "On November 11, 2024, Executive Director Bayne issued a letter affirming N.M.'s forty-five day suspension," which would be reduced to eleven (11) days upon N.M.'s completion of three (3) counseling sessions.  *Id*. ¶ 81.  Executive Director Bayne stated that N.M.'s "subjective intent does not change that fact that it was reasonable to foresee that [his] words would cause fear in others[.]"  *Id*. ¶ 82 (first alteration in original).  Executive Director Bayne further observed that N.M.'s "words did have a reasonable effect to inflict fear or realize personal gain (i.e., a better grade)."  *Id*.

#### 2.  Appeal to Superintendent Streeter

On November 20, 2024, N.M. appealed Executive Director Bayne's decision.  FAC (Doc. 7) ¶ 83.  On December 5, 2024, "Superintendent Streeter issued a letter affirming N.M.'s suspension but modifying the length of N.M.'s suspension to nine days."  *Id*. ¶ 84. In support of his decision, Superintendent Streeter observed that the District's definition of threat or intimidation included "verbal, written or physical communications *or acts* made with the intent or *reasonable effect* to inflict fear, injury or damage or to realize personal gain."  *Id*. ¶ 86 (emphasis in original).

### E.    *N.M.'s Return to School*

"N.M. was allowed to return to campus during his suspension to take the PSAT, after which he waited unsupervised on campus for Karalee to pick him up."  FAC (Doc. 7) ¶ 87.  Upon N.M.'s return to school, his teachers and classmates were unaware that "he had been suspended for 'threatening' the school," he was not questioned by any teachers, and there were no restrictions on his activity.  *Id*. ¶ 88.  Following his return to campus, N.M. did not speak with "administrators, teachers, school counselors, or the School

resource Officer about his mental health, propensity for violence, access to guns, or desire to 'shoot up' the school." *Id*. ¶ 89.

### F.    September 17, 2024, Safety Update

On September 17, 2024, Principal Kauffman sent a "Safety Update" to the Marana community, which stated:

> I also need us to work together to educate our students about the seriousness of making jokes about guns, violence at school, or about people . . . students must understand that making jokes or statements about guns and violence involving schools and/or people will result in significant consequences. This ranges from long-term suspension to expulsion . . . These statements can be life-changing for a student, but also can negatively impact the students around them. Students feeling comfortable making statements about hurting others will not be tolerated at Marana High School.

FAC (Doc. 7) ¶ 90.

### G.    Plaintiff's Complaint

Plaintiff brings this action pursuant to Section 1983, Title 42, United States Code, alleging a violation of his First Amendment right to free speech, as applied to the States through the Fourteenth Amendment. *See* FAC (Doc. 7) ¶¶ 92–115. Plaintiff also asserts a denial of his due process rights in the course of his suspension against Defendants Kauffman, Meece, and Marana Unified School District. *See id*. ¶¶ 116–144. Plaintiff seeks both monetary and injunctive relief. *See id*. ¶¶ A–I.

## II.    STANDARD OF REVIEW

A complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(a), Fed. R. Civ. P. While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998) ("conclusory allegations of law and unwarranted inferences are not sufficient to

defeat a motion to dismiss.").

Rule 12(b)(6) motions are meant to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where a plaintiff has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations omitted).

"When ruling on a motion to dismiss, [the Court must] accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). "The court draws all reasonable inferences in favor of the plaintiff." *Id.* (citing *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008)). This Court is not required, however, to accept conclusory statements as a factual basis. *See Twombly*, 550 U.S. at 555; *Mann v. City of Tucson*, 782 F.2d 790, 793 (9th Cir. 1986) ("Although we must, in general, accept the facts alleged in the complaint as true, wholly vague and conclusory allegations are not sufficient to withstand a motion to dismiss."). Accordingly, "[d]ismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Boquist v. Courtney*, 32 F.4th 764, 773–74 (alterations in original) (quoting *Admas v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (quoting *Navarro*, 250 F.3d at 732) ("[d]ismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory").

## III.   ANALYSIS

Defendant seek dismissal of Plaintiff's First Amended Complaint (Doc. 7) pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.  *See* Defs.' Mot. to Dismiss (Doc. 20). Defendants attached five (5) exhibits to their motion to dismiss.  *See id.*, Exhs. "A"–"E." "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted).  As such, the Court will first consider which documents presented by Defendants should be considered in the resolution of their motion.  It will then address each argument for dismissal, in turn.

### A.   *Exhibits Attached to Defendants' Motion to Dismiss*

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond."  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b); then citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998)). "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  Before reviewing the exceptions, it should be noted that "a court may consider 'material which is properly submitted as part of the complaint' on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment."  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994)), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

### 1.   Incorporation-by-Reference

The incorporation-by-reference doctrine applies "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's complaint."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted).  In this circumstance, the document "may be considered if . . . [its] 'authenticity . . . is not

contested' and the 'the plaintiff's complaint necessarily relies' on [it]." *Id.* (alterations in original) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006)); *see also Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents"); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (a court may consider a document where a plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute its authenticity). "Th[is] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002 (citing *Parrino*, 146 F.3d at 706). Where a defendant offers such a document, "the district court may treat . . . [it] as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908. "[I]t is improper[, however,] to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). Similarly, "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.* at 1002. If a court allows defendants to incorporate such documents into their motion to dismiss, it could allow them to "use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.* (citations omitted).

### 2. Judicial Notice

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Furthermore, "[a] court may take judicial notice of 'matters of public record' . . . [b]ut a court may not take judicial notice of a fact that is

'subject to reasonable dispute.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citations omitted), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Therefore, "[o]n a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" *Id*. at 690 (quoting *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999)). "Judicial notice is appropriate for records and 'reports of administrative bodies.'" *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954). "A court must also . . . identify . . . which fact or facts it is noticing" from such a document. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

### 3. <u>Exhibits Attached to the Motion to Dismiss</u>

Plaintiff does not object to the inclusion of any of the exhibits attached to Defendants' motion. The Initial Long-Term Suspension Appeal (Exh. "A") and Second Long-Term Suspension Appeal (Exh. "C") were both drafted Plaintiff's counsel and are referenced in the FAC (Doc. 7). Similarly, the Initial Appeal Decision (Exh. "B") and Long-Term Suspension Hearing Notice (Exh. "E") were referenced in the FAC. The Court will take judicial notice of these documents in so far as they were sent or received by the parties and the date on which that occurred. The Court will not take judicial notice of the truth of the statements contained within the exhibits, but can take notice of the fact of statements contained therein.

Defendants also attach the Marana Unified School District Discipline Policy Manual (Exh. "D") to their motion to dismiss. Plaintiff cites to various provisions from this manual in his FAC. As such, the Court finds that it has been incorporated by reference and may be relied upon, accordingly.

### B. *Failure to Exhaust, Waiver, Preclusion*

Defendants initially asserted that "Plaintiffs' claims are waived because N.M. and

- 10 -

his parents never raised their First Amendment or due process claims during the disciplinary process which involved a hearing and two levels of appeal." Defs.' Mot. to Dismiss (Doc. 20) (citing Exhs. "A" and "C"). Plaintiff counters that "the Supreme Court unequivocally held that exhaustion of state administrative remedies is not required to bring an action under . . . § 1983, reasoning that Congress intended that law to interpose the federal courts between the States and the people, as guardians of the people's federal rights[.]" Pl.'s Response (Doc. 23) at 16 (second alteration in original) (citing *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 503 (1982) (internal quotations and citations omitted)). Defendants recognize the correctness of this statement, but attempts to assert that the doctrines of waiver and preclusion bar Plaintiff's First Amendment and Due Process claims. Defs.' Reply (Doc. 27) at 6–9. Defendants' arguments are without merit.

"As a general rule, if a petitioner fails to raise an issue before an administrative tribunal, it cannot be raised on appeal from that tribunal." *Reid v. Engen*, 765 F.2d 1457, 1460 (9th Cir. 1985) (citations omitted). "Like virtually all general principles, however, the foregoing principle has its exceptions." *Id*. at 1460–61. The Ninth Circuit Court of Appeals went on to observe "[a]s the Supreme Court has explained, '[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions. . . .[W]hen constitutional questions are in issue, the availability of judicial review is presumed.'" *Id*. at 1461 (quoting *Califano v. Sanders*, 430 U.S. 99, 109 (1977)). The *Reid* court concluded that it "must address the merits of proper constitutional arguments although they were not raised in the administrative proceeding." *Id*. Consistent with *Reid*, Plaintiff did not need to raise his First Amendment or Due Process claims at the administrative level prior to seeking review in this Court.

Defendants assert that "[w]hen an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." Defs.' Reply (Doc. 27) at 7 (quoting *United States v. Utah Constr. &*

*Mining Co.*, 384 U.S. 394, 422 (1966)).  Defendants point to *Garcia v. Bostic*, 818 Fed. App'x 686 (9th Cir. 2020), as support for "the claim-preclusive scope of the administrative decisions" challenged by § 1983 claims.  *Id*. (quoting *Garcia*, 818 Fed. App'x at 688–90).  The Court notes that *Garcia* is an unpublished decision which is not binding precedent on this Court.  U.S. Ct. of App. 9th Cir. R. 36-3(a).  Regardless, *Garcia* is instructive for understanding how a court assesses the judicial character of an administrative proceeding.  At the administrative hearings in *Garcia*:

> [E]ach appellant: agreed on a presiding hearing officer; was represented by counsel; and had multi-day hearings at which they were able to make opening statements and arguments, submit documentary evidence, and examine and cross-examine witnesses under oath.  Moreover, a court reporter recorded a verbatim transcript at the hearings, each appellant had the opportunity to submit a brief with arguments, and the hearing officer issued a written decision finding that just cause existed to terminate the appellants.  Each proceeding was also subject to judicial review via a petition for a writ of mandate pursuant to California Code of Civil Procedure section 1094.5

*Garcia*, 818 Fed. App'x at 688–89.

Defendants next look to *Olson v. Morris*, 188 F.3d 1083 (9th Cir. 1999), for the Arizona rules of preclusion.  Defs.' Reply (Doc. 27) at 7–8.  The *Olson* court instructs that a "federal district court must independently assess the adequacy of the state's administrative forum."  188 F.3d at 1086.  "The threshold inquiry . . . is whether the state administrative proceeding was conducted with sufficient safeguards to be equated with a state court judgment."  *Id*. (quoting *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1033 (9th Cir. 1994)).  At the administrative proceedings before the Arizona Board of Psychologist Examiners, "Olson knew that he was fully entitled to be represented by counsel[,]" and the Arizona administrative scheme provided for judicial review of the final decision.  *Id*. at 1085–86.

The disciplinary proceedings in the instant case do not appear to have any transcripts associated with them, nor did Plaintiff have the right to judicial review of the final decision.  The proceedings as described by the parties were generally informal and do not meet the

criteria for having "sufficient safeguards to be equated with a state court judgment." *Id*. at 1086 (quotations and citations omitted). Accordingly, the Court finds that Plaintiffs' claims are neither precluded nor waived.

### C.    First Amendment Claim

Defendants seek dismissal because the speech at issue "occurred on a school computer during the school day" and therefore is not protected by the First Amendment. Defs.' Mot. to Dismiss (Doc. 20) at 7–10; *see also* Defs.' Reply (Doc. 27) at 1–6. Defendants further assert that irrespective of where the speech occurred (on- or off-campus), it is not the type of speech protected by the First Amendment. *Id*. at 10–11. Plaintiff argues extensively regarding the legitimacy of his speech and its entitlement to First Amendment protection.

The Court appreciates the Parties thorough and thoughtful briefing; however, we are at the motion to dismiss stage. The Parties arguments are those that should be made at summary judgment. At the motion to dismiss stage, dismissal is appropriate where a plaintiff has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Ninth Circuit has recognized that at the motion to dismiss stage of the litigation, the standard "is not that plaintiff's explanation must be true or even probable[,]" only that "[t]he factual allegations of the complaint . . . 'plausibly suggest an entitlement to relief.'" *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011) (quoting *Iqbal*, 129 S. Ct. 1951). Furthermore, "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Id.* at 1216. It is clear from the briefing that Defendants understand the scope and nuance of Plaintiff's First Amendment claim. The Parties disagree regarding the proper characterization of Plaintiff's speech and whether or not it is entitled to First Amendment protection. Such disagreements are appropriate for resolution by the courts, but not on a motion to dismiss.[4] Accordingly, the Court will deny Defendants' motion to

---

[4] The record before the Court is virtually non-existent. The arguments presented require information that the Court does not yet have. This underscores the premature nature of the briefing.

dismiss regarding Plaintiffs' First Amendment claim.

### D.    *Due Process Claim*

Defendants seek dismissal of Plaintiff's due process claim asserting that he, through his parents, received proper notice and an opportunity to be heard prior to the imposition of the 10-day suspension.  Defs.' Mot. to Dismiss (Doc. 20) at 12–13.  Defendants further assert that Plaintiff and his parents also received notice and were provided an opportunity to be heard prior to the long-term suspension.  *Id*. at 13.  Defendants also emphasize that N.M. and his parents were given the opportunity to participate in the long-term suspension hearing.  *Id*. at 13–14.  Plaintiff argues that he was denied procedural due process prior to imposition of the 10-day suspension because no one from the school spoke to him regarding what happened, they only spoke to his parents.  Pl.'s Response (Doc. 23) at 16–17 (citing *Goss v. Lopez*, 410 U.S. 565, 583–84 (1975)).

### 1.    Due Process—In General

The Fourteenth Amendment Due Process Clause provides that "[n]o state shall . . . deprive any person of life, liberty or property, without due process of law[.]"  U.S. Const. amend. XIV § 1.  "Protected interests in property are normally 'not created by the Constitution[;] [r]ather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits."  *Goss v. Lopez*, 419 U.S. 565, 572–73 (1975) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  As relevant to this case, students have a "legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."  *Id*. at 574.  "Due Process[, however,] is flexible and calls for such procedural protections as a particular situation demands."  *Wynar v. Douglas Cnty. Sch. Dist.*, 728 F.3d 1062, 1073 (9th Cir. 2013).

### 2.    Procedural Due Process

"To obtain relief on a procedural due process claim, the plaintiff must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation

of the interest by the government; [and] (3) lack of process." *Dudley v. Boise State University*, 152 F.4th 981, 990 (9th Cir. 2025) (quotations and citations omitted). As noted, *supra*, Plaintiff has a property interest in his public school education. Second, there was a deprivation of that interest when he was suspended. Accordingly, the Court will turn to what process was due.

### a. 10-day suspension

"The Constitution requires only informal procedures when schools suspend students for ten days or fewer." *C.R. v. Eugene School District 4J*, 835 F.3d 1142, 1153 (9th Cir. 2016). The Supreme Court has mandated that "the student [must] be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). Furthermore, "[t]here need be no delay between the time 'notice' is given and the time of the hearing." *Id*. at 582. "In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred." *Id*. "The school need not outline specific charges and their potential consequences or notify parents of the charges prior to the student's suspension." *C.R.*, 835 F.3d at 1153 (citing *Wynar*, 723 F.3d at 1072–73).

Here, on October 9, 2024, prior to N.M.'s initial 10-day suspension and within an hour of his closing his laptop, Principal Kauffman and School Resource Officer Michael Abrigo called Karalee asking about N.M.'s location. FAC (Doc.7) ¶ 44. Principal Kauffman explained the notification she received regarding N.M.'s Chromebook use and reported that the Gaggle alert she received had a photograph of N.M.'s screen with the draft e-mail. *Id*. ¶¶ 45, 47. Karalee explained that N.M. was home with her, described the circumstances of the draft e-mail, conveyed that it was a joke, and that he did not intend to send the draft e-mail. *Id*. ¶ 49. Further discussion occurred between Principal Kauffman and Karalee regarding the incident. *Id*. ¶¶ 50–52. Later that same evening, Principal Kauffman called and left a voicemail for Karalee conveying N.M.'s 10-day suspension. *Id*. ¶¶ 54–57. Curtis returned Principal Kauffman's call, and they discussed N.M.'s

punishment. FAC (Doc. 7) ¶¶ 58–59.

Plaintiff asserts a due process violation because no one from Marana High School spoke to him, only his parents, prior to the imposition of his 10-day suspension. Pl.'s Response (Doc. 23) at 16–17. This technical reading of *Goss* is misplaced. The purpose of "requiring effective notice and informal hearing permitting the student to give his version of the events [is to] . . . provide a meaningful hedge against erroneous action." *Goss*, 419 U.S. at 583. In recognizing this goal, the Supreme Court observed that "[a]t least the disciplinarian will be alerted to the existence of disputes about facts and arguments about cause and effect . . . [and] [i]n any event, his discretion will be more informed and we think the risk of error reduced." *Id*. at 583–84. Contacting a student's parents is considered a step beyond what *Goss* requires. *Wynar*, 723 F.3d at 1073 (holding that the Constitution does not "require parental notification prior to imposing a 10-day suspension or prior to meeting with a student.") Plaintiff's mother described the situation to Principal Kauffman as a witness to the event. There is nothing before the Court to suggest that N.M.'s story would have been any different. As such, it would not decrease the risk of error by Marana High School disciplinarians in any meaningful way. Plaintiff received all the process that he was due. As such, the Court will dismiss his procedural due process claim arising from his 10-day suspension.

### b. Long-Term Suspension

In his opposition to Defendants' motion to dismiss, Plaintiff does not challenge dismissal of any procedural due process claim regarding his long-term suspension. *See* Pl.'s Response (Doc. 23). Exhibit "E" demonstrates that on October 21, 2024, Plaintiff was given notice prior to the long-term suspension hearing. Plaintiff's FAC confirms his participation in the same. (Doc. 7) at ¶¶ 132–38. To the extent that Plaintiff asserts "the school violated his procedural due process rights by not following its *own* policies regarding [discipline,]" such a failure "does not, itself, constitute a violation of constitutional due process." *C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1154 (9th Cir. 2016) (quotations and citations omitted). Finally, regarding Plaintiff's claim that he was

not allowed to cross-examine witnesses, N.M. has not presented any facts to suggest that he or his parents were denied such an opportunity. Furthermore, the sole witness was present at the hearing. *Cf. Dudley v. Boise State Univ.*, 152 F.4th 981, 997 (9th Cir. 2025) (holding the denial of plaintiff's right to cross-examination because witnesses were not present at her disciplinary hearing violated her procedural due process rights). Accordingly, the Court finds Plaintiff received the process which he was due and has failed to state a procedural due process claim arising from his long-term suspension.

## IV.    CONCLUSION

Based upon the foregoing, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Doc. 20) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the Parties stipulation for oral argument (Doc. 28) is DENIED AS MOOT.

Dated this 27th day of March, 2026.

Eric J. Markovich
United States Magistrate Judge

- 17 -